IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHRISTOPHER A. STARKS AND TINA W. STARKS AS PERSONAL REPRESENTATIVES FOR THE ESTATE OF BRITTANY JASMINE OSWELL, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:19-cv-00253-P |
| AMERICAN AIRLINES, INC., | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant American Airlines, Inc.'s "No Evidence" Motion for Partial Summary Judgment (ECF No. 149) and "No Evidence" Motion for Summary Judgment Regarding Causation (ECF No. 155). Having considered the motions, responses (ECF Nos. 160, 193), and replies (ECF Nos. 184, 199), as well as the attachments thereto, and for the reasons set forth more fully below, the Court finds that summary judgment as to causation should be **GRANTED** and Plaintiffs' case **DISMISSED with prejudice.**

## BACKGROUND

This wrongful-death case arises out of tragic events that occurred on Flight AA102 from Honolulu, Hawaii to Dallas-Fort Worth International Airport ("DFW") on April 14–15, 2016. Amend. Compl. at ¶ 7, ECF No. 13. Brittany Oswell, a twenty-five-year-old passenger on the flight, became seriously ill approximately three hours after takeoff. *Id.* Jessica Garrett, M.D., an anesthesiologist who was on board, volunteered to help. Damages MSJ App'x at 6, ECF No. 151; Causation MSJ App'x at 36, ECF No. 157. Based on Dr.

Garrett's initial examination, she thought that Mrs. Oswell suffered a panic attack but that her condition had improved, so Dr. Garrett returned to her seat. Pls.' Causation MSJ Resp. Br. at 3.

Approximately three hours later, Mrs. Owell needed to use the lavatory. Pls.' Causation MSJ App'x Ex. 1, ECF No. 192-2 at 14. After hearing a loud "thump," Mrs. Oswell's husband discovered that she was vomiting and had profuse diarrhea, so Dr. Garrett was again called for assistance. *Id.* A transcript of the telephone call between American's Physician on Call ("POC") and Flight AA102, which included communication with Dr. Garrett, reveals Dr. Garrett's initial and follow-up assessments:

> DR. GARRETT: Initially when I saw her, she was responsive. She wasn't feeling well. She was tired. The physician assistant -- flight attendant told me that she thought the patient had had a seizure. I personally did not witness any seizure activity, however, I did witness her, like, clench her hand. But every action she made was intentional. And I felt her pulse. Her pulse was in the 80s. It was full. And she was okay a couple hours ago.
>
> Now she was -- or when they woke me up and I went back to see her, she was responsive but less so. And she was sitting on the toilet. She had diarrhea. And then, she was actively vomiting in front of me. And there were periods where she just wasn't reacting to us or being responsive at all. However, she did still have a pulse. She was still breathing. So I told the husband and the flight attendant the situation, that I really wanted to get her on the floor in case the situation got worse. I wanted her on her side in case she continued to vomit. And I wanted to be able to assess her better in the flight attendant area.
>
> We got her on the floor. We got some oxygen on her. She is more responsive on the floor with oxygen, but she is still very weak. She's tachypneic. She can't seem to slow her breathing. I'm not sure if that's anxiety-related or related to something else, but she does have a faster pulse. Her pulse (inaudible). I considered starting an IV but I don't have a definitive diagnosis to what is going on. And I don't know of any kind of medication that I would give her to help her, other than maybe Zofran.

Causation MSJ App'x at 7–8.

Although not part of the transcript, Dr. Garrett later testified in a deposition that she had requested a diversion as soon as she saw Mrs. Oswell in the lavatory: "[A]s soon as I saw [Mrs. Oswell's] condition when she was on the commode, I immediately stated that the flight needed to be landed." Pls.' Causation MSJ App'x Ex. 1, ECF No. 192-2 at 4–5. Dr. Garrett testified that at that time she believed that Mrs. Oswell's "condition was grave and [that] she needed immediate medical attention and that the flight needed to be landed." *Id.*, ECF No. 192-2 at 5; *see also id.* at 17 ("No matter what was causing her condition, I recognized her to be critical and in need of immediate medical care."). Dr. Garrett believed at that point that Mrs. Oswell needed to be on the ground in 30 minutes with medical treatment and that Mrs. Oswell would have survived if she had received the necessary treatment during that timeframe:

> A.    So if there is an airport nearby, that is within an hour and a half, if we can get on the ground within 30 minutes and we can get her to a hospital - - usually near an airport there's a major medical facility - - even if that took another half-hour, that's still enough time to get her to a facility where she could receive appropriate care for the condition that she's in.

> Q.    Okay.  That's different - - that's a different statement, so I want to talk about it.  If you could get the aircraft on the ground and get [Mrs. Oswell] off the plane in 30 minutes, your medical opinion is she could have received treatment and possibly survived?

> A.    Yes.

3

ECF No. 192-2 at 30.[1]

After speaking with Dr. Garrett, the captain of Flight AA102, Daniel Black spoke to the POC and the POC directed the flight crew to continue the approach for landing at DFW. Causation MSJ Resp. Br. at 5, ECF No. 193. Dr. Garrett returned to Mrs. Oswell, who subsequently "coded" and CPR was administered. ECF No. 192-2 at 43. The Captain declared a medical emergency, had the airspace cleared, and Flight AA102 landed at DFW twenty-three minutes ahead of schedule. Causation MSJ App'x at 30–31. Upon landing at DFW, Mrs. Oswell was taken by EMS to Baylor Scott & White Medical Center - Grapevine. *Id.* at 36. Sadly, Mrs. Oswell died three days later. Causation MSJ Br. at 3. The death certificate lists Mrs. Oswell's cause of death as a pulmonary embolism. Causation MSJ App'x at 36; *see Yasko on behalf of Yasko v. Standard Ins. Co.*, No. 12 C 2661, 2014 WL 2155227, at *1 (N.D. Ill. May 19, 2014) ("Pulmonary embolism is when one or more pulmonary arteries in [the] lungs become blocked[.]").

Plaintiffs, Christopher A. Starks and Tina W. Stars, as the Personal Representatives for the Estate of Brittany Jasmine Oswell, filed the instant wrongful-death suit against American in the United States District Court for the District of South Carolina, alleging claims under South Carolina law for negligence resulting in wrongful death, survivorship,

---

[1]It is unclear from the record where exactly Flight AA102 was when Dr. Garrett requested an emergency landing. But Dr. Garrett testified that an emergency landing in Phoenix would have spared Mrs. Oswell's life. Causation MSJ App'x at 21, 23, ECF No. 157 at 23, 25. However, Captain Daniel Black testified that Phoenix was never an option, and the airport that Flight AA102 could have diverted to was Albuquerque, which is more than 600 miles from Phoenix. Pls.' Causation MSJ App'x at 178–79, ECF No. 192-2 at 90–91.

and loss of consortium.  ECF No. 1 ("Comp.").  The case was eventually transferred to this

Court.  ECF No. 59.

> Plaintiffs' basic contention is that
>
> American's flight crew should have – and could have – landed Flight AA102 upon being advised to do so by the physician who attended her on the flight, Jessica Garrett, MD and their failure to do so at the earliest possible opportunity led to Mrs. Oswell's brain injuries and death.

Gause Resp. Br. at 1, ECF No. 145.  To prove their case, Plaintiffs designated Dr. Garrett

as an expert witness to testify as to Mrs. Oswell's cause of the death and Mr. Gause as an

expert witness as to the standard of care for the American crew in responding to the medical

emergency that occurred on Flight AA102 and as to the location of Flight AA102 for early

landing options.  *See* ECF Nos. 91, 92.  American filed motions to strike both Dr. Garrett

and Mr. Gause (ECF Nos. 133, 136).  The Court denied the motion to strike Dr. Garrett.

ECF No. 152.

The Court also denied the motion to strike Mr. Gause as to the standard of care for

a midair medical emergency.  *Id.* at 7.  However, the Court granted the motion to exclude

Mr. Gause's testimony as to early landing options because Mr. Gause had no knowledge,

experience, or training regarding the timing of the events occurring on Flight AA102

relative to the early landing options.  *Id.*

Subsequently, American filed a "no-evidence" motion for partial summary

judgment as to damages (ECF No. 149), and a separate "no-evidence" motion for summary

judgment as to causation (ECF No. 155).  Plaintiffs have filed responses (ECF Nos. 160,

193[2]) and American has filed replies (ECF Nos. 184, 199).  Additionally, American filed

a motion to strike Plaintiffs' summary-judgment appendix ("Mt. to Strike," ECF No. 183)

in support of its response in opposition to summary judgment.  The summary judgment

motions and motion to strike are now ripe for review.

### MOTION TO STRIKE

Before considering the summary-judgment motions, the Court addresses

American's motion to strike.  "The court has broad discretion to grant or deny a motion to

strike."  *Rodriguez v. Hall*, No. SA-14-CA-459-OLG, 2015 U.S. Dist. LEXIS 194665, at

*15 (W.D. Tex. 2015).  A "district court's evidentiary rulings [are reviewed] for abuse of

discretion."  *Hollis v. Am. Airlines, Inc.*, 138 F.3d 1028, 1030 (5th Cir. 1998).

### A.      General Objections

American's first objection is to all of Plaintiffs' summary judgment exhibits because

"Plaintiffs attach no affidavits in support of their Response[,]" so American asserts that

each exhibit is unauthenticated and should be stricken from the record.  Mt. to Strike at 2.

Plaintiffs respond that most of the documents are from American's production and are

records kept in the regular course of American's business, and as such, are admissible.

Response to Mt. to Strike at 2.  The Court agrees with Plaintiffs.

"The nonmoving party need not produce . . . evidence in a form that would be

admissible at trial, to avoid summary judgment."  *Smith v. Prager*, 108 F.3d 333 (5th Cir.

---

[2]With respect to Plaintiffs' response to the motion for summary judgment on causation, they filed an unopposed motion to seal the response brief and appendix in support thereof.  ECF No. 192.  Having considered the unopposed motion to seal, the Court finds that it should be and hereby is **GRANTED.**

1997); *see also Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017) (holding that at the "summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form").  The Court's review of Plaintiffs' summary judgment exhibits reveals that although they are not in trial-ready form, the exhibits are easily authenticated and should not be stricken from the summary judgment record.  *See Vasquez v. Landon*, No. 4:18-CV-00340-P, 2020 WL 905360, at *4 (N.D. Tex. Feb. 25, 2020) (overruling police-officer defendant's objection to unauthenticated summary judgment exhibit containing detective's typed notes because Rule 56 does not require nonmoving plaintiff to produce evidence in a form that would be admissible at trial in order to avoid summary judgment), *appeal dismissed*, 821 F. App'x 395 (5th Cir. 2020).

Therefore, American's objection to Plaintiffs' summary judgment exhibits is **OVERRULED.**

**B.      American's Remaining Objections**

With regard to American's objection to Dr. Garrett's deposition excerpts, the Court will address the facts and evidence supporting Dr. Garrett's causation opinion more fully below.  And for the reasons already set forth in the Court's order granting in part American's motion to exclude Mr. Gause's expert testimony, the Court finds that American's objection to Mr. Gause's deposition excerpts regarding when and where an early landing should have taken place should be **SUSTAINED**, so the portions of Plaintiffs' summary judgment exhibits 33, 34, 42, 54, 55, 56, and 57 containing testimony about American's early landing options are hereby **STRICKEN.**

However, the remainder of American's motion to strike appears to be boilerplate objections (primarily hearsay) to various excerpts of statements, testimony, and reports relied upon by Plaintiffs.  As the majority of these statements, testimony, and reports are from a party opponent and indeed, were produced by American in this lawsuit, the Court finds that American's objections should be and hereby are **OVERRULED.**

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (c)(1).  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  While the moving party "must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor.  *Anderson*,

477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288–89 (1968)).

When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158–59 (1970)). However, it is not incumbent upon the Court to comb the record in search of evidence that creates a genuine issue as to a material fact. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## ANALYSIS

### A.    Summary Judgment Practice in Federal Court

As an initial matter, American confuses federal and state practice by filing "no-evidence" motions for summary judgment: "A no-evidence motion for summary judgment . . . is a pleading that may be filed in state court, ***but not federal court***." *BB Energy LP v. Devon Energy Prod. Co. LP*, No. 3:07-CV-0723-O, 2008 WL 2164583, at \*12 (N.D. Tex. May 23, 2008) (O'Connor, J.) (citing *Casteneda v. Flores*, No. 5:05-CV-0129, 2007 WL 1671742, at \*2–3 (S.D. Tex. June 8, 2007)) (emphasis added); *see also Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005) ("[T]he concept of a 'no evidence' summary judgment neither accurately describes federal law nor

has any particular import in . . . federal summary judgment procedure."). The Court is mystified by American's fundamental misunderstanding of the federal and Texas procedure.

Despite this confusion, the Fifth Circuit in *Stahl v. Novartis Pharmaceuticals Corp.*, considered a case in which the plaintiff-appellant protested that the trial court had "improperly placed the summary judgment burden on him, the nonmoving party, without first requiring [the defendant] to come forward with documentary proof of the absence of a genuine issue of material fact regarding [the plaintiff]'s claim." 283 F.3d 254, 263 (5th Cir. 2002). The panel explained that the plaintiff-appellant had "misread[] both Rule 56 and the *Celotex* decision" because the moving party may meet its burden to demonstrate the absence of a genuine issue of material fact "by pointing out that the record contains no support for the non-moving party's claim." *Id.*

Therefore, while American has improperly characterized its motions as "no-evidence" motions for summary judgment, the Court heeds the Fifth Circuit's guidance in *Stahl* and begins with American's assertion and record citations to determine if the record contains any support for Plaintiffs' claim. If the Court determines that American has met this initial burden, the Court will then consider whether Plaintiffs have come forward with sufficient evidence to show that the disputed material fact would be resolved in Plaintiffs' favor.

**B.      Plaintiffs Have No Causation Evidence that is Required Under Texas Law**[3]

Plaintiffs' entire case is premised on being able to establish that American's failure

to divert Flight AA102 was the proximate cause of Mrs. Oswell's death:

> The central contention in the Plaintiffs' case is that American's flight crew
> should have – and could have – landed Flight AA102 upon being advised to
> do so by Dr. Garrett, and their failure to do so at the earliest possible
> opportunity led to Mrs. Oswell's brain injuries and death.  Plaintiffs have
> brought suit against American . . . for that wrongful death.

ECF No. 160 at 4.  To establish proximate cause, Plaintiffs designated Dr. Garrett, and in

her expert report, Dr. Garrett's medical causation opinion hinges on the timing of Flight

AA102 being diverted when she requested:

> 7.      It is my opinion, to a reasonable degree of medical certainty, that *if
> the plane had been diverted when I first requested it*, there was still time to
> administer the recommended course of treatment for the pulmonary
> embolism which Brittany Oswell experienced on this flight.  Furthermore, it
> is my opinion, to a reasonable degree of medical certainty, that *if the plane
> had been diverted when I again requested a diversion a second time*, there
> was still time to administer the recommended course of treatment for a
> pulmonary embolism.
>
> 8.      It is my opinion, to a reasonable degree of medical certainty, that *if
> Brittany Oswell had received the course of treatment for the pulmonary
> embolism described above within the time frame when I requested an*

---

[3]Plaintiffs originally asserted that South Carolina law should apply to this case.  ECF
No. 160 at 9 n.6 ("As the Court is aware, the Plaintiffs originally filed suit in South Carolina, and
based their prayer for relief on the application of South Carolina law.").  However, Plaintiffs do
not dispute American's contention that Texas law applies to the claims in this case, nor do
Plaintiffs properly set forth a motion asking the Court to determine whether South Carolina or
Texas law applies.  *See id.* at 10 ("Under Texas law, as applied in this diversity action . . . .").
Accordingly, the Court applies Texas law.  *See State Farm Fire & Cas. Co. v. Miraglia*, No. 4:07-
CV-013-A, 2008 WL 11350060, at *2 (N.D. Tex. Jan. 30, 2008) (McBryde, J.).

> *emergency landing*, then she more probably than not would not have experienced brain death.

ECF 192-1 at 11 (emphasis added).

American challenges that Plaintiffs lack evidence showing that it was possible for Flight AA102 to make an early landing when Dr. Garrett requested. Causation MSJ Br. at 10, ECF No. 156. Thus, the material fact that Plaintiffs must establish is that American had early landing options upon receiving notice by Dr. Garrett that Mrs. Oswell required emergency medical care. To make their case, Plaintiffs need Dr. Garrett's testimony to be supported by evidence establishing that American should have and could have made an early landing when she requested. According to American, with the exclusion of Mr. Gause's opinion, Plaintiffs lack any evidence that a diversion of Flight AA102 was necessary and possible, and "[w]ithout such evidence, Plaintiffs cannot prove that a failure to divert caused [Mrs.] Oswell's injuries and subsequent brain death. Without medical causation established, Plaintiffs have no case." *Id.*

"In a wrongful death action, a plaintiff generally must provide expert testimony to prove that the alleged . . . negligence proximately caused the injury." *Wackman v. Rubsamen*, 602 F.3d 391, 400 (5th Cir. 2010) (internal quotation marks omitted); *Ware v. United Airlines, Inc.*, No. 4:16-CV-00513, 2017 WL 5127166, at *3 (S.D. Tex. Sept. 1, 2017) ("Under Texas law, the plaintiff has the burden of proving causation to establish a claim for negligence."). "Depending upon the facts of the case, expert testimony may be required to establish proximate cause." *Andrews v. Dial Corp.*, 143 F. Supp. 3d 522, 528 (W.D. Tex. 2015). In particular, "when the causal link is beyond the jury's common

understanding, expert testimony is necessary." *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119–20 (Tex. 2004) (citations omitted). Whether expert testimony is necessary to prove a matter or theory is a question of law. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) (citing *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004)).

In this case, causation must be established by expert testimony. "[C]omplex injuries such as cardiac arrest are typically beyond the purview of laypersons." *Ware*, 2017 WL 5127166, at \*3; *see also Mueller v. Charter Oak Fire Ins. Co.*, 533 S.W.2d 123, 125 (Tex. App.—Tyler 1976, writ ref'd n.r.e.) ("Causation is not generally presumed in heart attack cases."). The Court concludes that it is beyond jurors' common understanding to know with reasonable medical certainty that if Flight AA102 had been diverted when Dr. Garrett requested, then Mrs. Oswell could have received the course of treatment necessary for a pulmonary embolism, and if Mrs. Oswell had received that course of treatment within the time frame when Dr. Garrett first requested an emergency landing then Mrs. Oswell would not have experienced brain death. The Court further concludes that it is beyond jurors' common understanding to know the location of Flight AA102 at the time Dr. Garrett requested an emergency landing and whether and where an emergency landing could have occurred.

American argues that the exclusion of Mr. Gause's testimony breaks the causal chain. Plaintiffs attempt to build their causal chain through the following expert testimony: Gause opines on what American should have done and where Flight AA102 could have landed, and Dr. Garrett opines on how Mrs. Oswell's health was affected by American's

13

failure to act.  But the exclusion of Mr. Gause's testimony breaks the chain, as Dr. Garrett's

opinions are now untethered from where it was possible for Flight AA102 to land.  *See*

ECF No. 152 at 7.  American asserts that this now creates a fatal lack of evidence for

Plaintiffs regarding causation:  "Plaintiffs' causation proof rests solely with their only

designated medical expert, Dr. Garrett."  Causation MSJ Br. at 7.

The Court agrees that American has identified in the record an absence of this

material fact.  That is, American has demonstrated based on Dr. Garrett's deposition

testimony that her medical causation opinion is premised entirely on Mr. Gause's now-

excluded opinion:

> Q.   Your medical opinion, that the plane could have been landed
>       quickly enough to get [Mrs. Oswell] help  --
>
> A.   That's correct.
>
> Q.   -- to save her life?
>
> A.   Yes.
>
> Q.   Based upon Shand Gause, whom you've never met?
>
> A.   Yes.  Based on his credentials, I trust what he has to say.
>
> Q.   About the flight --
>
> A.   Yes.
>
> Q.   -- that he wasn't on?
>
> A.   Correct.
>
> . . . .
>
> Q.   So how long would it have taken to land the plane in Phoenix
>       at 7:08 a.m.?

> A.     I would have to defer that sort of expertise to Mr. Gause.
>
> Q.     So how, then, can you form a medical opinion with a reasonable degree of certainty that care would have been in time?
>
> A.     Because based on the information from Mr. Gause, who is a professional who understands flights and things of that matter extremely well, I was able to say that the flight needed to be landed before we were approaching Phoenix, and that through his statement, I can derive that we could have been on the ground in a very short period of time.

Causation MSJ App'x at 21, 23.

Dr. Garrett attempted to bolster her expert opinion by stating that she relied not only on Mr. Gause's report but also on external evidence from American. However, when questioned, Dr. Garrett acknowledged that she had never seen the external evidence:

> Q.     You based your medical opinions, which you say you want 100 percent precise in your report --
>
> A.     Yep.
>
> Q.     -- and reasonable medical certainty in your opinions, you base in large part on Shand Gause's report?
>
> A.     Shand Gause's report, as well as any reports that would have come from American Airlines about the timeline and the routes taken.
>
> Q.     You have not seen those?
>
> A.     I have not.

*Id.* at 20–21. Dr. Garrett's opinion that is not based on personal knowledge is not evidence.

Therefore, the Court concludes that American has met its burden and demonstrated no evidence supporting Plaintiffs' causation theory, so the burden has shifted and Plaintiffs

must now set forth some evidence to establish that Flight AA102 could have been diverted

and made an early landing, and had American diverted Flight AA102, it would have

enabled Mrs. Oswell to receive the emergency medical treatment she needed.

**C.     Plaintiffs' Non-Expert Causation Evidence Does Not Support Dr. Garrett's Expert Opinion**

In response, Plaintiffs set forth non-expert deposition testimony from Daniel Black,

the Captain on Flight AA102 in which he identified Albuquerque, New Mexico as a

potential early landing spot after he had been notified about Ms. Oswell's illness:

> Q.     Okay.  Okay.  You were awakened to the best of your
>        knowledge    what happened right after that?
>
> A.     I went to the cockpit.
>
> Q.     Okay.
>
> A.     And started doing procedures to get the MEIS about the
>        passenger and getting ready to set up the SATCOM to call
>        the POC and also consideration of in the event I needed to
>        divert, that I was looking at the airports that were
>        available.
>
> Q.     What airports were available in that assessment?
>
> A.     The one that I can remember that would have been available
>        at that time would have been Albuquerque.

Pls.' Causation MSJ App'x at 178–79, ECF No. 192-2 at 90–91.  Captain Black also

confirmed that Phoenix was never part of his assessment:

> Q.     Okay.  Was Phoenix ever considered in your assessment?
>
> A.     No.

*Id.*

16

Plaintiffs further identify testimony from Flight AA102's First Officer Jeff Yeargain, in which he stated that Albuquerque was available as a diversion point when Mrs. Oswell became ill. Pls.' MSJ Resp. Br. at 9, ECF No. 193. Thus, Plaintiffs argue that even absent Mr. Gause's expert testimony, they have some evidence to support Dr. Garrett's opinion that Flight AA102 could have been diverted because Albuquerque, New Mexico was an option for an emergency landing. *Id.* at 10. But there is no evidence that landing in Albuquerque would have saved Mrs. Oswell's life.

In its reply, American points out that Dr. Garrett's expert opinion is that Flight AA102 needed to divert when she requested and that this has always been when the flight was over San Bernardino National Forest. Causation Reply at 5, ECF No. 199; ECF No. 91 at 8. American also points out that when Dr. Garrett next requested an emergency landing, the possible landing spot was approximately 30 minutes later near Phoenix, Arizona. Causation Reply at 6–7. Now, Plaintiffs assert that although Dr. Garrett's expert opinion is that time was of the essence for Mrs. Oswell's treatment, summary judgment should be denied because the evidence supports that Flight AA102 could have been landed in Albuquerque—more than 600 miles away from Phoenix. *Id.* at 6.

The Court notes that while Captain Hill's and First Officer Yeargain's testimony is some evidence of an emergency landing option in Albuquerque, it fails to save Plaintiffs' case from summary judgment because it does not comport with Dr. Garrett's expert opinion that "if the plane had been diverted when I first requested it, there was still time to administer the recommended course of treatment for pulmonary embolism . . . ." ECF No.

192-1 at 11.  Indeed, Dr. Garrett testified that she requested a diversion to Phoenix, not

Albuquerque:

> A.  And if we had diverted at that time, I'm guessing that that would have been Phoenix.  Phoenix is a very large airport. I'm assuming that that would be a large enough hub to accommodate a plane the size of the one that we were on for this flight.  And the medical facility in Phoenix is – I don't know exactly how bar, but it's a pretty straight shot on the highway because Phoenix is set up in such a great way.
>
> Q.  So how long would it have taken to land the plane in Phoenix at 7:08 a.m.?
>
> A.  I would have to defer that sort of expertise to Mr. Gause.
>
> Q.  So how, then, can you form a medical opinion with a reasonable degree of certainty that care would have been in time?
>
> A.  Because based on the information from Mr. Gause, who is a professional, who understands flights and things of that matter extremely well, I was able to say that the flight needed to be landed before we were approaching Phoenix, and that through his statement, I can derive that we could have been on the ground in a very short period of time.  And the medical center is not far from the airport.  I would have to look at the exact amount of time it would take to get to the hospital from that airport – I don't have that information in front of me – but Phoenix is set up very well.

Causation MSJ App'x at 23.

Dr. Garrett's expert opinion is that if Flight AA102 had been diverted to Phoenix

when she requested, Mrs. Oswell could have received the necessary course of treatment

for a pulmonary embolism.  Although Dr. Garrett's testimony was clear that the early

landing needed to occur in Phoenix, Plaintiffs' only evidence over an early landing was

from Captain Black who stated Albuquerque was an option and that Phoenix was never

considered.  Pls.' Causation MSJ App'x at 179.  Because Dr. Garrett's expert opinion is

not supported by evidence, Plaintiffs do not have evidence supporting their theory of

causation.  *See Ware*, 2017 WL 5127166, at \*4 (granting motion for summary judgment

on causation when the plaintiff "failed to present a genuine issue of material fact connecting

Plaintiff's heart attack to her fall" while exiting airplane).

Therefore, American's motion for summary judgment as to causation should be and

hereby is **GRANTED.**  Because the Court grants American's motion for summary

judgment on causation, the Court need not address American's motion for partial summary

judgment on damages.  Accordingly, it is **DENIED as moot.**

## CONCLUSION

Based on the foregoing, the Court finds that American's Motion for Summary

Judgment Regarding Causation should be and hereby is **GRANTED.**  Accordingly,

Plaintiffs' claims should be and hereby are **DISMISSED with prejudice.**  American's

Motion for Partial Summary Judgment on Damages is **DENIED as moot.**  Any other

pending motions are hereby **DENIED.**

**SO ORDERED** on this the **14th day** of **January, 2021.**


_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE